IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Eric Suchomelly, Jr.,** )<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**Jennings, et al.,** )<br>**Defendants.** ) | No. 1:23cv1140 (RDA/LRV) |

MEMORANDUM OPINION

Eric Suchomelly, Jr., a Virginia inmate proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights while he was detained at the Piedmont Regional Jail. Dkt. No. 1. The original complaint ("OC") named Sgt. Jennings, Officer C. Miller, and Officer Garner as defendants. *Id.* at 1. Sgt. Jennings was alleged to have struck Plaintiff from behind and then Miller and Garner are alleged to have taken Plaintiff to the medical department after the assault concluded. *Id.*

On October 18, 2023, the Court screened the OC, noted deficiencies, and granted Plaintiff leave to amend. Dkt. No. 8. The Order noted that there was no address for service, the OC was not signed, and it was unclear how many claims Plaintiff was attempting to raise. *Id.* at 2-3. Plaintiff was granted leave to file an amended claim, and the Order directed him to "separately number each claim that plaintiff seeks to raise by letter or number;" for "[e]ach designated claim" Plaintiff was to "provide a statement of the claim" that included "the federal right he alleges has been violated;" and thereafter, Plaintiff was directed to name each "defendant or defendants associated with each claim, and provide the facts associated with the claim." *Id.* at 2-3. Plaintiff was further directed to provide the dates on which the assault occurred and whether he was a pretrial detainee on those dates or if he had already been convicted. *Id.* at 3. The Order reiterated that in the amended complaint Plaintiff was to "nam[e] every person he wishes to include as a defendant;" number

each claim he sought "to raise by letter or number;" and "cure the deficiencies noted." *Id.* at 4. Plaintiff was provided a printed form to assist him in filing an amended complaint.

Plaintiff, using the printed form provided, filed his first amended complaint on November 29, 2023 ("FAC"). Dkt. No. 10. The FAC named two defendants: Sgt. Jennings and Piedmont Regional Jail ("PRJ"). *Id.* at 1, 2. The FAC alleged that, while Plaintiff was being escorted by three PRJ staff members, Defendant Jennings struck him from behind, several times, in violation of his Eighth Amendment rights. The other two staff members were Officers Miller and Garner, but neither was named a defendant. *Id.* at 4. He alleges he was denied his request to go to the hospital by an unnamed person in violation of his Fourteenth Amendment rights. Next, he was placed in "the Hole," without a charge within "24 hours," in violation of his "4th Amendment right to due process." Lastly, Plaintiff asserts that he was verbally harassed while he was in "the Hole." *Id.* at 4, 5.

On February 21, 2024, the Court screened the FAC and noted deficiencies. Dkt. No. 13. The Court found the Eighth Amendment claim against Defendant Jennings could go forward and ordered service on Defendant Jennings. *Id.* at 5. The Court dismissed PRJ as a defendant, dismissed the claims of verbal harassment and violations of the grievance process. *Id.* at 3, 4, 5. Miller and Garner were also each dismissed because the FAC failed to name either as a defendant.

Defendant Jennings waived service and filed a motion to dismiss on April 18, 2024. Dkt. No. 20. In response, Plaintiff filed a motion to amend his complaint, with a proposed amended complaint, on May 13, 2024, Dkt. Nos. 24 and 24-1, and an opposition to the motion to dismiss on May 21, 2024. Dkt. No. 26. Plaintiff also sought discovery. Dkt. Nos. 22, 37. On December 18, 2024, the Court addressed the outstanding motions in a Memorandum Opinion and Order. Dkt. No. 39. The Court denied the motion to dismiss without prejudice, and granted leave to file a second amended complaint because to answer the deficiencies noted in the motion to dismiss. The

Order directed Plaintiff to file his amended complaint (the Second Amended Complaint, "SAC") within thirty days, using a pre-printed form. Specifically, the Court directed Plaintiff to address deficiencies and directed him to

> identify the claim or claims that Plaintiff is seeking to raise by letter or number, and he shall identify the federal right he alleges has been violated in each claim. In this respect, Plaintiff must clearly allege that he was a pre-trial detainee on February 24, 2023, because an excessive force claim for a pre-trial detainee plaintiff is evaluated under a different standard than a convicted plaintiff. For a pre-trial detainee, that standard is derived from the Fourteenth Amendment and a complaint must allege that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

Dkt. No. 39 at 4-5. The motions for discovery and appointment of counsel were denied. *Id.* at 6-7.

On January 21, 2025, Plaintiff filed his SAC, which named Defendant Jennings and added back as defendants, Officers Miller and Garner. Dkt. No. 40. The SAC did not number the claims and instead set forth four pages of narrative. Within that narrative, Plaintiff alleges that he was a pre-trial detainee on the date of the assault, February 24, 2023, realleges his allegations against Defendant Jennings, and then alleges that he pleaded with Officers Miller and Garner for assistance during the assault by Defendant Jennings "to no avail." *Id.* at 6.

On February 18, 2025, Defendant Jennings filed a motion to dismiss, with a supporting brief. Dkt. Nos. 41, 42. On February 19, 2025, the Court advised Plaintiff of his rights under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), to file a response to the motion to dismiss. Dkt. No. 43. On March 25, 2025, Plaintiff sought an extension of time, Dkt. No. 45, which the Court granted on March 28, 2025. Dkt. No. 46. Plaintiff's response was due on or before April 28, 2025. Plaintiff has not filed a response or otherwise communicated with the Court since he filed the motion for an extension of time on March 25, 2025. The matter is now ripe for disposition, and for the reasons that follow, Defendant Jenning's Motion to Dismiss must be denied.

3

## I. Standard of Review

Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp.2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Where a complaint is filed by a prisoner acting *pro se*, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. *Haines v. Kerner*, 404 U.S. 519, (1972). A *pro se* litigant is therefore not held to the strict pleading requirements demanded of attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) ("This Court reads *pro se* pleadings to raise the strongest arguments that they

4

suggest, and we consider whether a *pro se* civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey.").

## II. Second Amended Complaint

On February 24, 2023, Plaintiff, a pre-trial detainee, was detained in the PRJ. Dkt. 40 at 4. Plaintiff alleges that, at some time between 9:30 and 11:30 a.m., he was approached by Defendant Jennings, Officers Miller and Garner, and a "Major" while Plaintiff was in the dayroom. *Id.* Plaintiff walked up to within six feet of them and said, "must be laundry day fellas," to which Defendant Jennings replied, "Oh, you like to be funny guy, well let's see how you like the hole." *Id.*

Plaintiff alleges that Defendant Jennings then placed Plaintiff in handcuffs and ordered him to exit the building. Plaintiff asserts that he was peaceful and cooperative during the handcuffing and his escort by the officers. *Id.* at 4-5. Officer Miller and Officer Garner were in front of Plaintiff and Defendant Jennings was behind Plaintiff as they entered the hallway. Once in the hallway, Plaintiff was struck on his head from behind, by Defendant Jennings, "several times before dropping to the ground." *Id.* "Plaintiff was not resisting or acting in any [manner] that required" that he be struck. *Id.*

Once on the ground, Plaintiff began to plead "for help from" Officers Miller and Garner, "to no avail." *Id.* at 5. Plaintiff "begged Sgt. Jennings to stop several times," but "Sgt. Jennings only responded by hitting harder and then verbally assaulting Plaintiff . . . ." *Id.* "Officers Miller and Garner stood by and did nothing. After the beating stopped, Plaintiff was escorted to medical." *Id.* Plaintiff told "medical" what had happened and he told them that he "may have a concussion. Plaintiff suffered many injuries, cuts, bruises, with blood all on his clothes." Plaintiff was treated by medical and placed in segregation for "13 days." *Id.*

5

When Plaintiff went to medical, PRJ staff were notified, and Investigator Lt. Cordell "told Plaintiff that he saw the camera footage" of what occurred in the hallway and that he "should seek legal help." *Id.* Plaintiff asserts that he was denied complaint and grievance forms.

The SAC lists three claims:

1) Defendant Jennings violated Plaintiff's Fourteenth Amendment rights "when he was harmed for no reason while restrained by 3 PRJ staff, and [in] handcuffs, no force should have been used in I Building Hallway." *Id.* at 7.
2) Defendant Jennings violated Plaintiff's First Amendment right to "Freedom of Speech" was violated because he "was punished" for "mak[ing] a joke." *Id..*
3) Officers Miller and Garner violated Plaintiff's "14th and 5th constitutional rights," when they "stood by and watched the assault," which is "deliberate indifference [because] they could [have] stopped . . Sgt. Jennings yet they did not." *Id.*

### III. Motion to Dismiss

Defendant Jennings raises several independent arguments for dismissal of the SAC. First, he argues the SAC should be dismissed because Plaintiff failed to comply with the Court's Order and label each claim by letter or number and set forth the facts in numbered paragraphs. Dkt. No. 42 at 2 (citing Fed. R. Civ. P. 41(b)). Second, he argues that the SAC is not supported by sufficient "'[f]actual allegations . . . to raise a right to relief above the speculative level' as to the defendant, [and] cannot survive a motion to dismiss." *Id.* at 4 (citing *Twombly*, 550 U.S. at 555). Third, he argues that the First Amendment claim, raised in the SAC for the first time, has no merit because the "joke" was not protected speech, such that Plaintiff has failed to show that his First Amendment rights were adversely impacted. *Id.* at 6-7. Fourth, Defendant Jennings asserts that the SAC "does not contain 'sufficient factual matter' for the court to infer a constitutional violation by Jennings." *Id.* at 9. Fifth, he argues that the SAC does not establish that Defendant Jennings acted under color of state law. *Id.* 10-11. Lastly, Defendant Jennings asserts that he is entitled to qualified immunity because "Plaintiff's allegations do not show that no reasonable officer what have done what is

6

alleged with respect to Jennings, or put the issue beyond debate" *Id.* at 13. Defendant's arguments fail to persuade and the motion to dismiss will therefore be denied.

### A. Rule 41(b)

A motion to dismiss under Rule 41(b) is committed to the discretion of the district court. *Richardson v. Boddie-Noell Enters.*, 78 F. App'x 883, 889 (4th Cir. 2003) (citing *McCargo v. Hedrick*, 545 F.2d 393, 396 (4th Cir. 1976)). "Because dismissal is such a harsh sanction, however, it 'should be resorted to only in extreme cases.'" *McCargo*, 545 F.2d 393 (quoting *Dyotherm Corp. v. Turbo Machine Co.*, 392 F.2d 146, 149 (3d Cir. 1968)); *see also Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978) ("A dismissal with prejudice is a harsh sanction which should not be invoked lightly in view of 'the sound public policy of deciding cases on their merits.'") (quoting *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)).

Here, although Plaintiff did follow the precise instructions of the Court, the Court had no difficulty in discerning the number of claims being raised in the SAC. In addition, Defendant Jennings had no difficulty in identifying the claims being made against him and responding thereto, and he does not assert he has been prejudiced. The Fourth Circuit has

> identified four criteria that guide a district court's discretion in dismissing a case under Rule 41(b). Such an exercise should weigh: "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal."

*Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019) (quoting *Hillig v. C.I.R.*, 916 F.2d 171, 174 (4th Cir. 1990)). Applying the factors in *Attkisson*, each points against dismissal. The Plaintiff is *pro se* and has consistently made good faith efforts to comply. Moreover, Defendant Jennings was not prejudiced and Plaintiff has generally been compliant. Thus, dismissal should not be invoked "in view of 'the sound public policy of deciding cases on their merits.'" *Davis*, 588 F.2d at 70. Accordingly, Defendant Jennings' motion to dismiss under Rule 41(b) will be denied.

*B. Sufficient Factual Allegations*

Defendant Jennings' second and fourth arguments each argue that the facts alleged are not sufficient to state a claim against him. Excessive force claims pursued by pretrial detainees like Plaintiff are governed by the Due Process Clause of the Fourteenth Amendment. *See Kingsley*, 576 U.S. at 400. To succeed, the Plaintiff must first demonstrate "that Defendants 'inflicted unnecessary and wanton pain and suffering'" upon the detainee. *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). However, a detainee may prevail by providing "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398. *Kingsley* set forth the factors that a court may consider to determine whether force qualifies as objectively unreasonable may include:

> the relationship between the need for the use of force and the amount of force used; the extent of [the detainee's] injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the [detainee] was actively resisting.

*Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386 (1989)).[1]

The SAC alleges that, during a peaceful and cooperative encounter between Plaintiff and Defendant Jennings and while Plaintiff's hands were handcuffed behind his back, Jennings struck him repeatedly in the head from behind requiring that Plaintiff had to be seen by medical where he was "treated" for "many injuries, cuts, and bruises" that left "blood all on his clothes." Dkt. No. 40 at 6.[2] The facts alleged are sufficient to establish a claim that Defendant Jennings use of force

---

[1] Surprisingly, Defendant Jennings does not cite nor discuss *Kingsley*, or the *Kingsley* factors.

[2] Defendant Jennings argues on brief that Plaintiff does not allege "that he actually needed or received any medical treatment." Dkt. No. 42 at 8. Given that it is undisputed that Plaintiff was taken to the medical department, where he expressly alleges he had to be treated for various injuries, cuts, and bruises and was covered by blood, the record at this point clearly indicates that Plaintiff's injuries needed medical treatment.

was objectively unreasonable. *Kingsley*, 576 U.S. at 396-97 ("a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."); *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987) (a pretrial detainee states a § 1983 claim under the due process clause of the Fourteenth Amendment by alleging intentional brutality or an unprovoked assault by a prison guard).[3] Accordingly, Defendant Jennings' arguments in this regard are unpersuasive and the motion to dismiss will be denied.

### C. First Amendment Claim

Defendant Jennings correctly notes that a First Amendment claim alleging that Plaintiff experienced government retaliation for his First Amendment-protected speech was not previously raised. Such a claim has three elements:

> A First Amendment retaliation claim requires a plaintiff to show that (1) his "speech was protected," (2) "the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech," and (3) "a causal relationship exists between [the plaintiff's] speech and the defendant's retaliatory action."

*Hodges v. Meletis*, 109 F.4th 252, 262 (4th Cir. 2024). Defendant Jennings argues that Plaintiff's First Amendment rights are "'more limited in scope, than for society at large." Dkt. No. 42 at 6 (quoting *Shaw v. Murphy*, 532 U.S. 223, 229 (2001)). In *Shaw v. Murphy*, the Supreme Court noted that it had "sustained proscriptions," which included "media interviews with individual inmates, prohibitions on the activities of a prisoners' labor union, and restrictions on inmate-to-inmate written correspondence" and that "because the 'problems of prisons in America are complex and

---

[3] Defendant Jenning's relies on *Yates v. DeGear*, 2024 WL 1482398 (E.D. Va. Feb. 27, 2024) and *Henderson v. Huling*, 2017 WL 4209761 (E.D. Va. Sep. 20, 2017). *Yates* concerned a conditions of confinement claim, and not an excessive use of force claim. The portion of *Yates* cited concerns "the objective nature of the harm plaintiff suffered" and whether the claimed harm constituted a "serious or significant physical injury." *Id.* at *3. The reliance on *Henderson* fails to note the significant difference between Plaintiff's allegations and those of Henderson. First, Plaintiff alleges that he was not resisting, he was peaceful, he was cooperating and there was no reason "force should have been used." Dkt. No. 40 at 4. Moreover, unlike Henderson who alleged no specific injury, *Henderson*, 2017 WL 4209761 *2 ("With regard to Plaintiff's medical claims, Plaintiff never alleges any specific injury"), Plaintiff listed several injuries for which he received medical treatment.

9

intractable,' and because courts are particularly 'ill equipped' to deal with these problems we generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." *Id.* (citations omitted).

Defendant Jennings cites two cases in support of his argument that Plaintiff's speech (the joke) was not protected speech. In *Huff v. Mahon*, 312 F. App'x 530, 531 (4th Cir. 2009), the Fourth Circuit affirmed a district court's decision finding

> An inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline, and in controlling violence clearly necessitate the prohibition of such comments. . . . Because the Court finds that the right to direct disrespectful comments toward prison officials in written correspondence is inconsistent with Huff's status as a prisoner, the Court must conclude that Huff did not have a First Amendment right to send written letters to prison officials in which he refers to them as "*cold, callus, cruel, evil, uncaring, unmercyful, [and] inhumane.*" The Court thus finds that Huff's speech was not protected and, therefore, that he has not demonstrated a violation of his constitutional rights.

*Id.* at 532 (emphasis added). In *Kervin v. Barnes*, 787 F.3d 833 (7th Cir. 2015), that court held that "backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected." *Id.* at 835. The language at issue here, in the light most favorable to Plaintiff—it "must be laundry day fellas,"—was a joke. Dkt. No. 40 at 4. In the current posture of this case, the comment is hardly a "disrespectful comment" or "backtalk."

Defendant Jennings next asserts that Plaintiff's First Amendment rights were not adversely impacted, and that "[t]he determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one—we determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." Dkt. 42 at 6 (quoting *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006)). For purposes of a motion to dismiss, the Court considers a severe beating by a guard of a peaceful, cooperative, handcuffed detainee (as alleged

in the SAC) might have a chilling effect. *Shaw*, 59 F.4th at 128 ("This Court reads *pro se* pleadings to raise the strongest arguments that they suggest, and we consider whether a *pro se* civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey."). Thus, this argument also fails.

Defendant Jennings' final argument, regarding the causation element, is conclusory, at best. In the context of this motion, in the light most favorable to Plaintiff, Plaintiff's allegation that Defendant Jennings severely beat him in retaliation for a joke is sufficient to defeat the motion to dismiss.

### D. Did Defendant Jennings Act "Under Color of State Law"

Defendant Jennings argument that he did not act under color of state law is refuted by the uncontested allegations. Defendant Jennings, a Sergeant in the PRJ, handcuffed Plaintiff while inside the PRJ, escorted him out of the dayroom, and then began to beat him from behind. Handcuffing and escorting a detainee with other correctional officers is a normal aspect of a correctional officer's duty. Further, there is no indication that Defendant Jennings was off duty or that this was a personal matter between him and Plaintiff. In the context of this motion and taking the allegations in the light most favorable to Plaintiff, Defendant Jennings was acting under color of state law.

### E. Qualified Immunity

Defendant Jennings further argues that "qualified immunity provides an alternative basis for barring plaintiff from pursuing monetary damages from Jennings." Dkt. 42 at 11. At this stage, Plaintiff's allegations are sufficient to defeat a claim of qualified immunity at this stage.

> "Qualified immunity shields state actors from liability under § 1983 . . . when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Turner[ v. Thomas]*, 930 F.3d [640,] 644 (4th Cir. 2019) (cleaned up). So, to defeat qualified immunity, [Plaintiff]

11

must do two things: (1) allege "a violation of a federal right," and (2) show that "the right at issue [was] clearly established at the time of the alleged violation." *Id.* If [Plaintiff] fails to meet his burden at either step, then the defendants are entitled to qualified immunity.

*Balogh v. Virginia*, 120 F.4th 127, 134 (4th Cir. 2024).

Initially, Defendant Jennings argues that "Plaintiff's allegations do not show that no reasonable officer what have done what is alleged with respect to Jennings, or put the issue beyond debate," which, is at best, unclear. Dkt. 42 at 13. Whatever Defendant Jennings intended, the argument ignores that, at the motion to dismiss stage, the facts are viewed in the light most favorable to the Plaintiff, and the Fourth Circuit employs a split burden of proof for the qualified immunity defense. The plaintiff bears the burden of proving the first prong, and the officer bears the burden on the second prong. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)); *see also Mays v. Sprinkle*, 992. F.3d 295, 302 n.5 (4th Cir. 2021) (explaining that plaintiff has the burden of proof to show a constitutional violation, while defendant must show the violation was not clearly established) (citing *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007)). To be a clearly established right, it must be sufficiently clear that a reasonable official would have understood that what he or she is or was doing violates that right. *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).

Plaintiff has clearly alleged that his constitutional rights have been violated with respect to each claim alleged against Defendant Jennings. Further, it is equally clear that a reasonable official would have understood that Plaintiff had a right not to be beaten by a correctional officer for telling a joke or to be beaten when he was proceeding cooperatively.

### IV. Additional Defendants

The SAC again names Officers Miller and Garner as defendants and alleges that Plaintiff begged Miller and Garner for help while Defendant Jennings beat him. He asserts that Officers

Miller and Garner "stood by and watched the assault," and "they could [have] stopped . . . Sgt. Jennings yet they did not." Dkt. 40 at 7. The allegations state a claim of bystander liability. "[I]f a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly." *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (observing that officer who stands by and does not seek to assist victim could be "tacit collaborator")); *see also Thompson v. Commonwealth*, 878 F.3d 89, 109 (4th Cir. 2017) (the "doctrine of bystander liability . . . imposes on officers 'an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers.'") (quoting *Randall*, 302 F.3d at 203).

The Fourth Circuit has stated that leave to amend "shall be freely given when justice so requires" and "'should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Under Rule 15, this Court has the discretion to grant a plaintiff leave to amend a complaint. Here, the OC named Officers Miller and Garner as defendants, and the FAC mentioned each in the statement of facts; there is no apparent prejudice to either Miller or Garner; and the statute of limitations[4] has not expired—the alleged assault occurred on February 24, 2023, and the SAC was dated January 15, 2025. Further, the Plaintiff alleges that there is video of the assault, and discussed the assault with Lt. Cordell, who investigated the matter at PRJ. Dkt. Nos. 1 at 1; 40 at 6. Adding Officers Miller and Garner is also in accordance with Rule 15(c), which governs such amendments. *McGraw v. Gore*, 31 F.4th 844,

---

[4] Virginia has a two-year statute of limitations for personal injury claims. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) (citing Virginia Code § 8.01-243(A)).

848 (4th Cir. 2022). In this case, there is no dispute that adding Miller and Garner satisfies Rule 15(c)(1)(B) because the claim against each arises from the same "conduct, transaction, or occurrence" as set out in the OC and the SAC. *Id.* Accordingly, each will be added as defendants in this matter and each will be served with a copy of the SAC.

Further, the First Amendment claim is also deemed added by amendment and the civil action will go forward on all three claims.

## V. Conclusion

For the reasons outlined above, the defendant's motion to dismiss, Dkt. No. 41, must be denied, and Officers Miller and Garner will be added as defendants. An appropriate Order shall be issued alongside this Memorandum Opinion.

Entered this 6th day of August 2025.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge