**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Eric Suchomelly, Jr.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:23cv1140 (RDA/LRV)** |
| | ) | |
| **Jennings, et al.,** | ) | |
| **Defendants.** | ) | |

MEMORANDUM OPINION and ORDER

This matter is before the Court on the motion for summary judgment filed by Defendants Sgt. Jennings (Jennings"), and Officer C. Miller ("Miller") or ("Defendants"), Dkt. Nos. 55, 56, seeking judgment against Plaintiff Eric Suchomelly, Jr. ("Suchomelly"); and Suchomelly's failure to respond to the Court's February 3, 2026, order directing him to show cause within twenty-one days as to why Defendant Garner should not be dismissed without prejudice for lack of service. Dkt. No. 67 at 2.

On November 13, 2025, the Court advised Suchomelly of his rights under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), to file a response to the motion summary judgment. Dkt. No. 57. On December 3, 2025, Suchomelly filed a response to the motion for summary judgment, and, on December 12, 2025, the Defendants filed a reply. Dkt. Nos. 62, 63. On July 14, 2026, after reviewing the pleadings and the Defendants affidavits, the Court, *sua sponte*, raised the issue of spoilation with regard to jail video records, and directed a response from the Piedmont Regional Jail (the "PRJ"). Dkt. 68. On August 14, 2026, PRJ filed its response explaining that, on February 24, 2023, its cameras did not record anything because of data limitations that were remedied in 2026. The Court reviewed the response and concluded that there is no basis for finding either bad faith or intentional destruction. As discussed below, the system at PRJ in 2023 simply did not

record anything on the date of the offense. The matter is now ripe for disposition, and, for the reasons that follow, Defendants' Motion for Summary Judgement must be denied.

**I. Spoilation**

"Spoilation [of evidence] is 'defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument.'" *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (quoting *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)). As set out in the Court's July 14, 2026, order, the Defendants' affidavits, Lt. Caddell admitted that he had reviewed "the video from February 24, 2023, but he determined that the system (camera angles) did not capture the incident, and no video was captured for him to view or preserve. Dkt. No. 56-4 at 2." Dkt. No. 68 at 1. PRJ's August 13, 2026, response has provided a fuller explanation of the phrase "no video was captured." *Id.*

Lt. Caddell arrived shortly after the February 24, 2023 incident, Suchomelly was being escorted to medical and told Lt. Caddell that Jennings had hit him in the face "when [Suchomelly] was being restrained." Dkt. No. 72 at 1. Lt. Caddell responded to Suchomelly that he would review "the camera footage of the incident" and went to his office to review the camera footage. *Id.* at 2.

> In February 2023, [PRJ's] Video Recording System was limited by server data storage allowing for only four days of recording data per channel and slow, unreliable feeds due to an overworked network switch system. As a result of these technical defects in the Video Recording System no video of the incident was captured, and there was nothing for me to view or preserve. No video of the incident was destroyed nor did anyone instruct the video to be destroyed. Rather, no video was ever recorded of the incident due to known system technical defects at the time. . . . . To correct these known technical defects, the Video Recording System was upgraded in February and March of 2026.

*Id.* at 2. In sum, no evidence was lost or destroyed because, at best, PRJ, not any of the Defendants, was negligent. *See Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (an inference of spoilation "'cannot be drawn merely from [the] negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial

and that his willful conduct resulted in its loss or destruction." (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). Accordingly, the Court finds that there is no spoliation in this regard.

**II. Standard of Review**

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. "(A) party opposing summary judgment may not simply rest on the allegations of his complaint but must instead come forward with specific evidence showing the existence of a genuine issue of fact." *Muhammad v. Giant Food*, 108 F. App'x 757, 764 (4th Cir. 2004) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

**IV. Analysis**

Suchomelly's Second Amended Complaint ("SAC") alleges three claims:

1) Defendant Jennings violated Plaintiffs Fourteenth Amendment rights "when he was harmed for no reason while restrained by 3 PRJ staff, and [in] handcuffs, no force should have been used in I Building Hallway." *Id.* at 7.

2) Defendant Jennings violated Plaintiffs First Amendment right to "Freedom of Speech" was violated because he "was punished" for "mak[ing] a joke." *Id.*

3) Officers Miller and Garner violated Plaintiffs "14th and 5th constitutional rights," when they "stood by and watched the assault," which is "deliberate indifference [because] they could [have] stopped . . . Sgt. Jennings yet they did not." *Id.*

The incident occurred on February 24, 2023, while Suchomelly was a pre-trial detainee at the Piedmont Regional Jail ("PRJ").

Here, the dispute of material facts is plain. The Defendants argue that, "[f]aced with inmate Suchomelly's verbally and physically threatening conduct on February 24, 2023, the officers acted to try to gain control over him for the safety of the officers and others in the Jail and maintain institutional security and order." Dkt. No. 56 at 10. Suchomelly, in his affidavit, avers that he "did not make any threats prior [to] or during the assault," and Miller and Garner "stood by and watched the assault [by Jennings] happen and did nothing to stop it." Dkt. No. 60 at 1.

The second and third claims (First amendment Retaliation and Bystander Liability) are both intertwined with the excessive force claim and predicated on the resolution of the excessive force claim. Jennings argues that

> Suchomelly was yelling profanity and threats throughout his dealings with the officers on February 24, 2023 from the moment he first approached the officers as the emergency response team entered the housing unit to conduct a search for contraband until after Sergeant Jennings and Office Miller were no longer dealing with him and other officers were still trying to calm Suchomelly down and get him under control.

Dkt. No. 56 at 14.[1] Suchomelly avers that he was not combative and "left peacefully out of" the housing unit and was thereafter restrained and "beat[en]" by Jennings. Dkt. 60 at 1. A significant dispute of fact of this magnitude needs to be resolved at trial.

Accordingly, it is hereby

**ORDERED** that the motion for summary judgment, Dkt. No. 55, is **DENIED**; and it is

**FURTHER ORDERED** that Defendant Garner is **DISMISSED WITHOUT**

---

[1] One of the entries on the February 24, 2023, in Suchomelly's medical records, submitted with the August 13, 2026 response, conflicts with Suchomelly's affidavit that he was peaceful and did not threaten anyone; the same entry, however, also indicates that there was a lump on Suchomelly's head.

> Pt brought to medical yelling and upset. Pt agitated, cuffed, with a bloody nose, blood coming from left nostril. Pt has red marks to neck and head, abrasions noted left elbow. Approximately 4 inch superficial scratch noted to right collarbone. Lump to back of the patients head noted to left side. Patient refusing to have lower body evaluated. Pt agitated, allowed this RN to assess his head and upper body.

Dkt. No. 73 at 14.

**PREJUDICE;** and it is

**FURTHER ORDERED** that the parties confer within thirty (30) days regarding settlement of Plaintiffs remaining claims. Before the end of this period, the parties are to advise the Court whether they have reached a settlement. If they have not, this matter will be referred to Magistrate Judge Vaala for a settlement conference.

The Clerk is directed to send a copy of this order to Plainitff, and to all counsel of record.

Entered this 25 day of August 2026.

Alexandria, Virginia

/s/ RA

Rossie D. Alston, Jr.
United States District Judge